Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7147 | **DATE** | 9/5/2001 |
| **CASE TITLE** | JEFF CARDWELL vs. BOARD OF EDUCATION, REAVIS COMMUNITY HIGH SCHOOL DISTRICT NO. 220, ET AL. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' motion for summary judgment [53-1] is granted. Judgment is entered for defendants Board of Education of Reavis Community High School District No. 220, et al. and against plaintiff Jeff Cardwell. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 10 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 69 |
| ✓ | Mail AO 450 form. | FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 01 SEP -7 PM 7:33 | 9/5/2001 date mailed notice | |
| SB | courtroom deputy's initials | Date/time received in central Clerk's Office | CB mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEFF CARDWELL | ) | |
| Plaintiff, | ) | |
| | ) | No. 00 C 7147 |
| v. | ) | |
| | ) | Suzanne B. Conlon, Judge |
| BOARD OF EDUCATION, | ) | |
| REAVIS COMMUNITY HIGH SCHOOL | ) | |
| DISTRICT NO. 220, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED

SEP 10 2001

## **MEMORANDUM OPINION AND ORDER**

Jeff Cardwell sues the Board of Education, Reavis Community High School District No. 220 ("the Board"), John W. Lennon, Jeffrey Wells, Kevin Mayer, Diane Dominguez, James Rokaitis, Stanley Smola, Jr., Ralph Strocchio ("members of the Board"), Louis Ross, Glen Marin, and Lawrence Daker (collectively "defendants")[1] for violations of the Americans With Disabilities Act, 42 U.S.C. § 12111 (Count I), 42 U.S.C. § 1983 ("§ 1983") (Count II), retaliation (Count III) and breach of contract (Count IV).[2] Defendants move for summary judgment, pursuant to Fed.R.Civ.P. 56.

## **BACKGROUND**

### I.    **The parties**

Cardwell is a resident of Burbank, Illinois. Reavis High School provides public high school

---

[1] The State and Municipal Teamsters and Chauffeurs and Helpers Union Local No. 726 was dismissed from this action.

[2] Cardwell's claims for intentional infliction of emotional distress were dismissed.

1



education in Burbank. Lennon, Wells, Mayer, Dominguez, Rokaitis, Smola, and Strocchio are members of the Board. Ross was Reavis' superintendent from July 1995 to June 2000. He was replaced by Daker. Marin has been Reavis' principal since July 1994.

## II. Cardwell's employment

Prior to 1991, the State and Municipal Teamsters and Chauffeurs Union Local No. 726 ("the Union") and the Board entered into a collective bargaining agreement ("CBA"), which addressed employment terms and conditions for the school's employees. On October 28, 1991, the Board hired Cardwell as a second shift school custodian/driver. Cardwell's job duties included sweeping floors, cleaning classrooms, setting up for parties, and driving a school bus. As a term of employment, Cardwell was required to attend yearly physical and eye examinations. Cardwell was diagnosed with a cataract in his right eye at birth. As a result of the cataract, he is partially blind in his right eye. However, between 1991 and 1998, optometrists who examined Cardwell found his vision in both eyes to be 20/40 or better with corrective lenses. They certified his vision as adequate for a commercial driver's license.

In October 1998, the examining optometrist, Dr. William Weaver, noted in his report that Cardwell's right eye decreased visual acuity since birth and that this problem could not be corrected with glasses. Dr. Weaver reported Cardwell's vision with corrective lenses as 20/20 in his left eye and 20/200 in his right eye. As a result of his poor right eye vision, Dr. Weaver refused to certify Cardwell's vision as adequate for a school bus driver's license. Cardwell obtained a second opinion from an optometrist who confirmed Dr. Weaver's diagnosis. Consequently, the Board no longer allowed Cardwell to drive a bus.

## III. Reavis' seniority system

During 1996 negotiations, the Union and the school district considered new policies for the school's employee seniority system. They agreed that custodian/drivers who lost their bus driver's licenses for health reasons could bump the most junior full-time custodian over which they had seniority. They also agreed that part-time custodians could be added to the bargaining unit. The 1998-2001 CBA contained the same provisions regarding part-time benefits and seniority.

As a result of the seniority policy, Cardwell was reassigned to a full-time custodian position after he lost his custodian/driver position. He bumped the most junior full-time custodian into a part-time position. The most junior part-time custodian was laid off. Cardwell's salary per hour as a full-time custodian was $2.33 lower than his salary as a custodian/driver, as mandated by the CBA.

In June 1999, Paul Pavlow, a Reavis custodian/driver, lost his school bus driver's license for health reasons. Pavlow had worked for the school longer than Cardwell. As a result, Pavlow bumped Cardwell, the most junior full-time custodian, into a part-time custodial position. Cardwell lost his medical benefits and received $8.38 less per hour in salary.

On July 1, 1999, Cardwell filed a union grievance. He complained that he was unjustly bumped into a part-time position. The school district and the Union followed the CBA provisions regarding grievances. Cardwell's grievance was denied.

In October 2000, Dan Gaffney, a full-time Reavis custodian, retired. Cardwell was the most senior part-time custodian at the time. Consequently, Negrete told Cardwell he could take Gaffney's full-time position. However, Daker warned Cardwell that he could be demoted to a part-time custodian at any time based on the seniority system. Cardwell has remained in a full-time custodial position since the transfer.

## IV. Cardwell's overtime opportunities as a full-time custodian

Overtime for full-time custodians is assigned at a supervisor's discretion. Seniority does not effect the assignment of overtime. Cardwell received some overtime as a full-time custodian.

In April 2000, Cardwell filed a complaint with the EEOC claiming that he was discriminated against because of his disability. He alleged that he was improperly denied overtime on two occasions and harassed by other employees once he started working part-time.

## DISCUSSION

### I. Summary judgment standard

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *King v. National Human Resource Committee, Inc.*, 218 F.3d 719, 723 (7th Cir. 2000); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56 (e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary judgment standard is applied with special scrutiny to employment discrimination cases because the outcome may depend on determinations of credibility and intent. *Michas v. Health Cost Controls of Illinois*, 209 F.3d 687, 692 (7th Cir. 2000).

## II. Disability discrimination

Cardwell brings an ADA claim against the Board. The ADA protects qualified individuals with disabilities from employment discrimination on account of the disability. "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual. . . ." 42 U.S.C. § 12112(a). A disability is defined as: "(1). a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *Amadio v. Ford Motor Company*, 238 F.3d 919, 925 (7th Cir. 2001). The first prong is applicable in this case. Cardwell alleges his impaired vision substantially limits major life activities. Am. Cmplt. at ¶ 42, p. 11.

Monocular vision is not a *per se* disability. *Albertson's Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999). The impact monocular vision has on major life activities must be examined on an individual basis. *Id.* Factors that must be considered include: (1) the degree of visual acuity in the weaker eye; (2) the age when the individual suffered vision loss; (3) the extent of the individual's compensating visual techniques; and (4) the extent of the individual's visual ability restrictions. *Id.* "This is not to suggest that monocular individuals have an onerous burden in trying to show they are disabled." *Id.* at 567. However, such individuals must "prove a disability by offering evidence that the extent of the limitation in terms of their own experience, as in loss of depth perception and visual field, is substantial." *Id.* Cardwell fails to offer sufficient evidence to meet this standard.

It is undisputed that Cardwell can no longer drive a school bus in Illinois. Working is considered a major life activity for ADA purposes. *Mattice v. Memorial Hospital of South Bend, Inc.*, 249 F.3d 682, 685-86 (7th Cir. 2001). However, "[w]hen the major life activity under

5

consideration is working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Sutton v. United Airlines, Inc.,* 527 U.S. 471, 491 (1999). Cardwell admits there is no broad class of jobs that he cannot perform. Defendants' 56.1 Statement of Facts ("Def. Facts"), Ex. 1 at 22.

Cardwell testified that the cataract affects his ability to see straight and his depth perception. Plaintiff's 56.1 Statement of Facts ("Pl. Facts") at ¶ 18; Ex. 1 at p. 353. Seeing is a major life activity under the ADA. *Sutton v. United Airlines, Inc.,* 527 U.S. 471, 480 (1999). However, Cardwell fails to offer sufficient evidence to show his visual limitations are substantial. He admitted during his deposition that his right-eye cataract does not affect his daily life. Def. Facts, Ex. 1, at 19. He further admitted the cataract does not limit his actions in any way. *Id.* In addition, he testified that he can drive a car and truck with the cataract. *Id.* at 19-20. He further testified the cataract does not affect his ability to care for himself, perform manual tasks, walk, speak, breath, learn, sit, stand, lift, reach for anything, or work. *Id.* at 20-22. Additionally, Cardwell stated on his Reavis employment application that he did not have any physical defects that precluded him from performing certain kinds of work. Def. Facts at ¶ 29.

Cardwell submitted an affidavit subsequent to his deposition. In the affidavit, he attested that his cataract limited the following activities: (1) judging distances and heights; (2) hiking and climbing; (3) walking without tripping or stumbling; (4) reading; and (5) looking at a computer screen. He further stated that his monocular vision makes him sensitive to glare and eye strain headaches. Pl. Facts, Ex. 2. These statements contradict his deposition assertions that he was not limited in any way by his cataract. Cardwell fails to offer a plausible explanation for these contradictions. Therefore, the court may not consider the contradictory statements in his affidavit.

6

*Russell v. Acme-Evans Co.*, 51 F.3d 64, 67-68 (7th Cir. 1995) ("Where deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken").

Even if the court considered Cardwell's affidavit, the evidence of life activity limitations would be insufficient. Cardwell fails to offer evidence, such as medical reports, to corroborate his testimony. Self-serving affidavits are insufficient by themselves for purposes of withstanding a summary judgment motion. *See e.g., McPhaul v. Board of Commissioners of Madison County*, 226 F.3d 558, 564 (7th Cir. 2000). Accordingly, summary judgment must be granted in favor of defendants with respect to Count I.[3]

## III. Section 1983

Cardwell brings a § 1983 claim against the Board and its members. To recover under § 1983, Cardwell must establish he was deprived of his constitutional rights by an individual acting under color of state law. *See* 42 U.S.C. § 1983; *Pickrel v. Springfield*, 45 F.3d 115, 118 (7th Cir. 1985). To state a claim under § 1983, Cardwell must show: (1) defendants deprived him of a constitutionally protected right and (2) the deprivation was caused by a municipal policy or custom. *Leahy v. Board of Tr. of Comm. College Dist. No. 508*, 912 F.2d 917, 922 (7th Cir. 1990).

### A. Equal protection

Cardwell contends defendants deprived him of his Fourteenth Amendment right to equal protection. To establish an equal protection violation, Cardwell must show "defendants acted with a nefarious discriminatory purpose and discriminated against him based on membership in a

---

[3]The arguments pertaining to whether defendants' actions constitute discrimination are moot for purposes of the ADA. However, they are addressed in sections three and four below.

definable class." *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996). Cardwell offers evidence that defendants treated him differently than non-disabled employees by (1) denying him overtime upon request; (2) giving him less overtime; (3) failing to stop other employees from harassing him; and (4) altering the CBA provisions to allow Reavis to bump him to part-time. Pl. Facts at ¶¶ 54-60, 69, 128.

Cardwell's evidence is insufficient to establish an equal protection violation. Disabled individuals do not qualify as a suspect or quasi-suspect class. Therefore, their discrimination claims are reviewed under rational basis scrutiny. *United States v. Harris*, 197 F.3d 870 (7th Cir. 1999). Under this standard, defendants cannot be held liable for discrimination when their actions are rationally related to a legitimate government purpose. *Id.* It is undisputed that in 1996 the Board and the Union agreed that a custodian/driver could bump a more junior full-time custodian. Plaintiff's Response to Def. Facts ("Pl. Fact Resp.") at ¶ 44. Therefore, the decision to demote Cardwell to part-time was rationally related to the Board's interest in complying with the union agreement. The fact that Cardwell bumped junior employees when he became a full-time custodian is further evidence that the Board's actions were not based on discrimination. Def. Facts at ¶ 38.

In regard to overtime, it is undisputed that Cardwell received 14 hours of overtime from October 1998 through December 1998, 40 hours of overtime in 1999, 8 hours of overtime in 2000 and 32 hours of overtime from January through June 2001. Def. Facts at ¶ 61.[4] Cardwell offers evidence to show that with two exceptions, he was granted less overtime than other custodians and

---

[4]In his response to defendants' facts, Cardwell denies he received overtime when he worked part-time. Pl. Fact Resp. at ¶ 61. However, he fails to offer any record support for this denial. Therefore, ¶ 61 is deemed admitted for purposes of summary judgment. *See* Local Rule 56.1(b)(3)(A) and (B).

8

custodians/drivers. Pl. Facts at ¶¶ 56-60. However, Cardwell fails to show he was similarly situated to these individuals in all respects or that he was available when overtime work was needed. In fact, Cardwell admits he was offered one or two hours a day of overtime for a period of two or three weeks, but he chose to take one hour instead of two. Pl. Fact Resp. at ¶ 63.

Cardwell's final attempt to establish an equal protection violation is based on harassment allegations. In determining whether the workplace is objectively hostile, courts consider "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *McPhaul v. Board of Commissioners of Madison County*, 226 F.3d 558, 567 (7th Cir. 2000) (internal citations omitted).[5] Cardwell offers evidence that full garbage cans were substituted for empty ones so he would be charged with dereliction of duty. Pl. Facts at ¶ 100. This alleged harassment only occurred once; there is no evidence the incident was related to Cardwell's cataract. Moreover, the incident did not result in disciplinary action against him. Defendants' Response to 56.1 Facts ("Def. Resp. Facts"), ¶ 100. Cardwell offers further evidence that four employees spread a rumor his brother took physicals for him. Pl. Facts at ¶ 92. However, he admitted these rumors did not impact his job performance. Def. Resp. Facts at ¶ 73. Finally, Cardwell offers evidence that employees called him names such as "marble eye," "one eye," and "roaming eye." *Id.* at ¶ 74. He fails to offer evidence to establish the number of times he was called these names or whether he found them to be physically threatening or humiliating. Based on this evidence, no reasonable jury could find Cardwell was subjected to a hostile work environment

---

[5] Section 1983 hostile work environment claims "follow the contours of Title VII claims." *King v. Board of Regents of the University of Wisconsin System*, 898 F.2d at 537. However, a plaintiff must establish intent to discriminate under §1983. *Id.*

9

because of his disability. Moreover, even if Cardwell could establish disparate impact, he has offered no evidence to establish that defendants' acted with discriminatory purpose.

### B. Defamation

Cardwell offers evidence to show defendants violated § 1983 by engaging in defamation. "Defamation by itself is not a constitutional deprivation." *Siegert v. Gilley*, 500 U.S. 226, 233 (1991). In order to qualify as a constitutional violation, the deprivation must impair Cardwell's Fourteenth Amendment liberty interests. *Id.*

In response to defendants' earlier motion to dismiss Count II for vagueness, the court found Count II implicated equal protection concerns when read in a light most favorable to Cardwell. The court did not find Cardwell sufficiently alleged defamation. The only complaint allegation even related to defamation is vague. Cardwell alleges "defendants denied his right to enjoy his reputation as an honest, decent custodian by maliciously slandering his reputation." Am. Cmplt. at ¶ 50(c), p. 15. Cardwell does not explain how defendants slandered his reputation. Moreover, "injury to reputation is by itself [is] not a 'liberty' interest protected under the Fourteenth Amendment." *Id.* at 234. The court need not address whether Cardwell offered sufficient evidence in his summary judgment motion to establish defamation. The summary judgment stage is too late for adding new claims. *Auston, IV v. Schubnell*, 116 F.3d 251, 255 (7th Cir. 1997). Summary judgment must be granted in defendants' favor with respect to Count II.[6]

### IV. Retaliation

Cardwell contends the Board retaliated against him for filing a charge of discrimination with the EEOC on April 11, 2000. In order to establish a *prima facie* case of retaliation, Cardwell must

---

[6]The arguments regarding municipal policy are moot.

10

show: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *McKenzie v. Illinois Department of Transportation*, 92 F.3d 473, 483 (7th Cir. 1996). "In order to demonstrate the causal link, [he] must demonstrate that [the Board] would not have taken the adverse action but for the protected expression." *Id.* (internal citations and quotations omitted).

Cardwell offers evidence he was denied overtime after he filed his claim. Pl. Facts at ¶¶ 54-60. He offers further evidence he was denied full-time pay on Columbus Day, even though he was told he could start full-time on the holiday. *Id.* at ¶ 113. In addition, he offers evidence to show the Union steward did not hold a meeting for custodians regarding the 2001 CBA until he received an order from the union president. *Id.* at ¶ 104. Finally, Cardwell contends the Board could have given Pavlow disability benefits in September 1999 and allowed Cardwell to replace him.[7] No reasonable jury could find this evidence establishes retaliation. Cardwell neither offers evidence that these alleged incidents constitute adverse employment actions nor evidence that these actions were related to his EEOC charge. In fact, the evidence and Cardwell's assertions suggest the contrary. Cardwell claims he was denied overtime opportunities *before* April 2000. *Id.* at ¶¶ 54-60. Similarly, any purposeful plan to prevent Cardwell from replacing Pavlow between September 1999 and April 2000 could not have been caused by retaliation for the April 2000 EEOC charge. In regard to Cardwell's Columbus day salary, it is undisputed that his first full-time day was after the holiday. Def. Facts at ¶ 54. The CBA states, "Holidays will be paid holidays only if [the] employee worked the scheduled day preceding and the scheduled day following said holiday." *Id.* at ¶ 55. Summary judgment must be granted in favor of defendants on Count III.

---

[7]Cardwell offers no citation to the record to support this assertion.

## V. Breach of contract

Cardwell does not dispute defendants' argument that the court lacks subject matter jurisdiction over his breach of contract claim. Accordingly, defendants' summary judgment motion is granted with respect to Count IV.

## CONCLUSION

Defendants' motion for summary judgment is granted.

September 6, 2001

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge